267 P.3d 1238

**Michele R. STEIGMAN, Petitioner–Plaintiff–Appellant,**

v.

**OUTRIGGER ENTERPRISES, INC., dba Ohana Surf Hotel, Respondent–Defendant–Appellee.**

No. SCWC–28473.

Supreme Court of Hawai'i.

Dec. 15, 2011.

---

Janice P. Kim, for petitioner-plaintiff-appellant.

Dennis E.W. O'Connor and Michael J. McGuigan of O'Connor Playdon & Guben, LLP, for respondent-defendant-appellee.

Arthur Y. Park and John C. McLaren, for Amicus Curiae Hawai'i Association for Justice.

RECKTENWALD, C.J., NAKAYAMA and DUFFY, JJ., and Circuit Judge WILSON, Assigned by Reason of Vacancy; and ACOBA, J., concurring separately.

Opinion of the Court by NAKAYAMA, J.

Petitioner–Plaintiff–Appellant Michele R. Steigman brought this tort action to recover damages after suffering a slip-and-fall accident while she was a guest of Respondent–Defendant–Appellee Outrigger Enterprises' Ohana Surf Hotel. The case went to trial, and a jury found that Outrigger was not negligent.[1] Steigman's appeal to the Intermediate Court of Appeals ("ICA") resulted in a Summary Disposition Order affirming the trial court's final judgment.

Steigman's application for writ of certiorari presents a question of first impression, namely, whether Hawaii's comparative negligence statute nullifies the common law tort defense barring recovery for plaintiffs injured by known or obvious dangers. Prior to the legislative enactment of comparative negligence, the courts of this state applied the rule of contributory negligence, and an injured plaintiff was denied recovery upon a showing that her negligence contributed to her own injury. *Torres v. Northwest Engineering Co.*, 86 Hawai'i 383, 399 n. 8, 949 P.2d 1004, 1020 n. 8 (App.1997). Then, "[a] legislative perception of unfairness in the common law doctrine of contributory negligence led to the passage of our modified comparative negligence statute in 1969." *Wong v. Hawaiian Scenic Tours, Ltd.*, 64 Haw. 401, 403–04, 642 P.2d 930, 932 (1982). The statute, Hawai'i Revised Statutes (HRS) § 663–31, states, in relevant part:

Contributory negligence shall not bar recovery in any action by any person or the

person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

HRS § 663–31(a) (1993). This statute eliminates contributory negligence, and instead provides that an injured plaintiff may recover against a defendant even if her negligence contributed to her own injury, as long as her negligence is not greater than that of the defendant.

Steigman contends that the traditional known or obvious danger defense conflicts with the Legislature's intent behind the comparative negligence statute. We agree. We therefore hold that in Hawai'i, the known or obvious danger defense is no longer viable as a complete bar to an injured plaintiff's claim in the context of premises liability.

## I. BACKGROUND

Steigman's application poses two questions. She asks whether, as a matter of law, the known or obvious danger defense is inconsistent with comparative negligence, and whether, as applied in her case, the jury instruction on the defense was properly given. We answer her first question in the affirmative, eliminating the need to consider her second question; thus a thorough review of the details of her case and the evidence presented over eight full days of trial is unnecessary. Nonetheless, this case is illustrative of the difficulty in applying the known or obvious danger defense. As such, a brief review of the facts of this case follows.

### A. Trial Proceedings

In 2003, Steigman and her family were guests of the Ohana Surf Hotel in Honolulu. On the afternoon of March 6, Steigman and

---

1. The Honorable Victoria S. Marks presided.

her family got caught in a rainstorm and returned to their hotel room to dry off. When Steigman went on the lanai[2] to get a chair, she slipped, slid across the balcony, and sustained injury to her foot when it got trapped under the lanai railing.

Steigman filed this lawsuit against Outrigger alleging negligence. At trial, Steigman presented evidence to prove that the hotel lanai was unsafe. An expert witness testified that the lanai's surface did not have the friction coefficient required by industry standards for exterior surfaces. Steigman's daughter testified that the lanai had a glossy surface, so it was difficult to determine by sight alone whether it was wet or dry. Steigman also presented evidence that an Outrigger employee had suffered a similar slip-and-fall accident on a lanai at the hotel, and therefore Outrigger knew of the dangerous condition. Throughout the trial, Outrigger argued that Steigman's injury was caused solely by Steigman's own negligence because the wet lanai presented a known or obvious danger of being slippery, and she chose to confront that danger.

At the conclusion of the trial, Outrigger proposed the following jury instruction: "A danger is open and obvious when a party either knew or should have known of it. Whether the Plaintiff actually discovered the danger is irrelevant." The court refused Outrigger's instruction and proposed the following instruction, fashioned after the Restatement (Second) of Torts:

A hotel operator is not liable to its guests for physical harm caused to them by any activity or condition in the hotel whose danger is known or obvious to them, unless the hotel operator should anticipate the harm despite such knowledge or obviousness.

The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciat-

ed. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the guest, exercising ordinary perception, intelligence, and judgment.

Steigmen's counsel objected to this instruction on the grounds that it was not supported by the evidence and that it conflicted with this state's comparative negligence statute. The court replied "Okay. And the Court's giving it because [of] the fact that it was raining, and the plaintiff knew it was raining."

The court provided the jury with a special verdict form. The first question asked "Was defendant Outrigger Enterprises, Inc., doing business as Ohana Surf Hotel, negligent?" The jury answered "no". As instructed by the form, the jury did not answer any further questions. The trial court entered a final judgment in favor of Outrigger, and ordered Steigman to pay Outrigger $29,722.30 for costs.

### B. The ICA's June 8, 2010 Summary Disposition Order

On appeal before the ICA, Steigman asserted five points of error. Three points of error are no longer relevant to this appeal. The remaining two of the points of error concerned the known or obvious danger instruction: Steigman argued that the facts of her case did not support the instruction, and that the instruction fundamentally conflicts with Hawaii's comparative negligence statute.

On November 16, 2010, the ICA filed a Summary Disposition Order affirming the trial court's judgment. *Steigman v. Outrigger Enterprises, Inc.*, No. 28473, 2010 WL 4621838 (App. Nov. 16, 2010)(SDO). Therein the ICA affirmed the trial court's judgment on all five points of error. With regard to the known or obvious danger arguments, the ICA held that the instruction was proper because there was substantial evidence to support the jury's finding. *Steigman*, 2010 WL 4621838 at *7 n. 5. The court also held

---

**2.** "Lanai" is a Hawaiian word meaning "porch, veranda, [or] balcony." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 193 (rev. ed. 1986).

that "there is no inherent conflict between the known or obvious doctrine and the comparative negligence statute," because the finding of a known or obvious danger completely absolves a landowner of his duty to people on his premises. *Steigman*, 2010 WL 4621838 at *6. The ICA's reasoning was as follows:

> [I]f the finder of fact determines that the hazard falls within the known or obvious doctrine, the question of comparative negligence is never reached as the defendant owes no duty to the plaintiff, and accordingly, cannot be negligent as a matter of law. In the absence of a legal duty owed to the plaintiff, there is no negligence to compare under HRS § 663–31.

*Steigman*, 2010 WL 4621838 at *6.

On December 16, 2010, the ICA filed its Judgment on Appeal. On February 10, 2011, Steigman filed a timely application for writ of certiorari. This court accepted Steigman's application on March 23, 2011 and heard oral argument on May 5, 2011.

## II. STANDARD OF REVIEW

"Questions of statutory interpretation are questions of law reviewable de novo." *Hawaii Government Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i 197, 201–02, 239 P.3d 1, 5–6 (2010) (quoting *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 420, 5 P.3d 407, 410 (2000)).

## III. DISCUSSION

The case at bar presents a question of first impression. However, the central core of the question is familiar, in that it requires this court to reexamine a traditional, judge-made rule of tort law in modern context, an analysis this court has previously undertaken. For example, until 1969, the state followed the common law rule that a landowner's duty to a visitor was determined by the visitor's purpose for being on the land; a landowner owed a high duty of care to visitors on the land for business purposes, called "invitees," but a smaller scope of duty to visitors there for non-business purposes, called "licensees." W. Page Keeton, et al., Prosser and Keeton

on the Law of Torts §§ 60 and 61, at 412 and 419 (5th ed. 1984). Then in 1969, this court abandoned the common law invitee/licensee distinctions and defined premises duty as follows: "an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." *Pickard v. City and County of Honolulu*, 51 Haw. 134, 135, 452 P.2d 445, 446 (1969). The court advanced two justifications for the change. First, courts had difficulty applying the common law classifications consistently. The court quoted language from the United States Supreme Court, noting that

> [i]n an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict.

*Id.* at 135–36, 452 P.2d at 446 (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–31, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959)).

The second justification for the change was that the distinctions had ceased to comport with modern values. The court quoted *Rowland v. Christian*, a California Supreme Court decision, which states that

> [a] man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and

humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

*Id.* at 136, 452 P.2d at 446 (quoting *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968)).

We believe that these justifications from the *Pickard* case apply in this case: we observe that courts have difficulty applying the known or obvious danger defense consistently, and that the defense is incompatible with the modern policy values that tort law seeks to effect. Furthermore, we believe that the known or obvious danger defense is inconsistent with the legislative intent behind our state's comparative negligence statute. And finally, we note that the majority of states to consider the question have abolished the use of the known or obvious danger defense as a complete bar to an injured plaintiff's recovery.

## A. The Known Or Obvious Danger Defense Frustrates The Legislative Intent Behind Comparative Negligence

To resolve Steigman's question, this court must interpret our state's comparative negligence statute. The statute, HRS § 663–31, provides:

(a) Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

HRS § 663–31 (1993). The statute is structured as follows: subsection (a) of the statute mandates that a plaintiff's negligence will not completely bar recovery for that plaintiff, as long as her negligence was not greater than the defendant's. Subsection (b) requires a special verdict form from the jury with findings of the total amount of damages and the percent of negligence of each party. Subsection (c) guides the court in administering the recovery, and subsection (d) permits the court to instruct the jury about comparative negligence where appropriate. The plain language of the statute does not expressly include or exclude actions involving known or obvious dangers. Our task then, in order to answer Steigman's question, is to effect the legislative intent behind the statute. *Hawaii Government Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i at 202, 239 P.3d at 6 (2010).

This court examined the legislative purpose behind the comparative negligence statute in a past case. In *Wong v. Hawaiian Scenic Tours, Ltd.*, the estate and parents of Wesley Wai Leong Wong brought suit against the City and County of Honolulu ("the City") and Hawaiian Scenic Tours after Wesley was fatally struck by a school bus. 64 Haw. 401, 402, 642 P.2d 930, 931 (1982). At trial, the jury determined that Hawaiian Scenic Tours was eighty percent at fault, the

City was six percent at fault, and Wesley was fourteen percent at fault. *Id.* at 403, 642 P.2d at 931. The City appealed, arguing that Wesley could not recover any damages from the City because the jury found it to be less at fault than Wesley. *Id.* The supreme court noted that in the time between the accident and the appeal, the Legislature had modified the statute to explicitly permit a plaintiff to recover against joint tortfeasors if their combined negligence was greater than the plaintiff's. *Id.* at 402 n. 1, 642 P.2d at 931 n. 1. However, the version of the statute that was in place at the time of the accident contained no such provision; therefore the court investigated the legislative intent behind the statute in order to resolve the City's appeal. *Id.* As this court wrote:

> [t]he legislative modification of the doctrine of contributory negligence in 1969 sought to temper a phase of the common law deemed inconsistent with contemporary notions of fairness. Its purpose was to allow one partly at fault in an accident resulting in injury to be recompensed for the damages attributable to the fault of another if the former's negligence was not the primary cause of the accident.

*Id.* at 405, 642 P.2d at 933. Informing this interpretation is a committee report which stated that allowing a plaintiff's contributory negligence to completely bar her recovery "seems to be unfair and in opposition to the average person's concept of justice." *Id.* at 404 n. 2, 642 P.2d at 932 n. 2. The supreme court held that the City remained liable even though the jury found that the plaintiff was more at fault than the City, because the point of the statute was to allow a plaintiff's recovery as long as the plaintiff was not the primary cause of the accident. *Id.* at 406, 642 P.2d at 933.

Applying this legislative intent to the known or obvious danger defense is straightforward. Under the known or obvious danger defense, a plaintiff cannot recover if the plaintiff is injured due to a known or obvious danger. *Friedrich v. Department of Transp.*, 60 Haw. 32, 36, 586 P.2d 1037, 1040 (1978) (superseded, in non-relevant part, by statute). This defense operates as a complete bar; a plaintiff may not recover even if she was extremely cautious in confronting the danger, and a defendant may not be held liable even if he knew the danger had a high likelihood to lead to injury but did nothing to correct it. *Id.* at 36 n. 1, 586 P.2d at 1040 n. 1 (citing 2 Harper and James, Torts, s 27.13 (1956)).

The known or obvious danger defense is "in opposition to the average person's concept of justice" because it mandates that a plaintiff must go uncompensated for her injuries, even if she acted with precaution and the defendant did not. The defense is incompatible with the state's comparative negligence statute because it denies a plaintiff the opportunity to have her fault compared with the fault of the defendant. As such, the known or obvious danger defense conflicts with the intent of the Legislature that the courts apply comparative negligence in the place of "unfair" common law doctrines.

## B. The Known Or Obvious Danger Defense Yields Inconsistent Results

There are few reported cases applying the known or obvious danger defense in this jurisdiction, however, among those cases, the difficulty in applying the defense is apparent. For example, in *Friedrich* this court affirmed the award of summary judgment to the state under the known or obvious danger defense. *Friedrich*, 60 Haw. at 32, 586 P.2d at 1038. The plaintiff in that case was walking down a state-owned pier in Hanalei Bay on Kaua'i when he slipped and fell over the edge, severely injuring himself. *Id.* at 34, 586 P.2d at 1039. As described in this court's opinion, the pier was at least 26 feet wide. *Id.* at 32, 586 P.2d at 1038. This court held that the danger of falling over the edge was known to the plaintiff, and therefore summary judgment in favor of the state was proper. *Id.* at 37, 586 P.2d at 1041.

In *Friedrich*, the court distinguished that factual scenario from a previous case, *Levy v. Kimball*. *Levy* involved a state-controlled seawall that was partially degraded and was anywhere from thirteen inches to two feet wide. 50 Haw. 497, 498, 443 P.2d at 142, 144 (1968). A tourist walked along the seawall and the heel of her shoe got stuck in a "bad spot." *Id.* at 498, 443 P.2d at 143. She fell

off the side of the seawall onto rocks eight feet below, sustaining injury. *Id.* In that case, this court reversed the trial court's judgment for the state, holding that the state was liable for the plaintiff's injury. *Id.* at 500, 443 P.2d at 145. There was no argument based on the known or obvious characteristics of the seawall, even though there is reference to a "bad spot" that may have been conspicuous, and even though the very act of walking along a degraded, two-foot wide seawall could be described as obviously dangerous.

*Friedrich* distinguished *Levy,* and instead of solely focusing on whether the danger was known or obvious, the court included in the analysis the question of whether the plaintiff could have avoided injury. *Friedrich,* 60 Haw. at 37, 586 P.2d at 1041. The court found no liability for the state in *Friedrich* because the plaintiff chose a route that placed him close to the pier's edge. *Id.* This result is the opposite of the holding in *Levy* but, according to the court, that was warranted because there was no proof that the plaintiff in *Levy* had a choice of a different route. *Id.* at 37, 586 P.2d at 1041. The end result is incongruous: the danger of walking on a 26-foot wide pier falls under the known or obvious defense, even though the danger of crossing a degraded two-foot seawall did not.

Another case involving a known or obvious danger, *Bidar v. Amfac,* 66 Haw. 547, 669 P.2d 154 (1983), is quite similar to the case at bar and illustrates the difficulty in knowing whether the known or obvious danger test applies. In *Bidar,* the plaintiff, an elderly tourist, was a guest of a hotel on Maui. *Id.* at 549, 669 P.2d at 157. She used the toilet in the hotel bathroom, and then tried to use the towel bar mounted on an adjacent wall to help pull herself up. *Id.* The towel bar tore loose from the wall, and plaintiff fell down to the ground, fracturing her hip and wrist. *Id.* Plaintiff filed suit and the hotel moved for summary judgment, arguing that it had no duty to provide a towel rack capable of supporting the guest's weight. *Id.* at 549–50, 669 P.2d at 157. The trial court agreed and granted summary judgment. *Id.* at 551, 669 P.2d at 158. On appeal this court reversed, holding that liability turned on the foresee-

ability of injury, an issue unsuitable for summary adjudication. *Id.* at 554, 669 P.2d at 160. In his dissent, Judge Spencer, assigned by reason of vacancy, wrote that he would affirm the grant of summary judgment because the towel bar is a known or obvious danger when used to support the weight of a person. *Id.* at 560, 669 P.2d at 163.

*Bidar, Friedrich,* and *Levy* show that the application of the known or obvious danger defense has been inconsistent here in Hawai'i. They also illustrate a large obstacle in applying the defense: it can be difficult to even define the danger that led to the injury and to determine whether the known or obvious danger defense should even apply. In *Friedrich,* the pier was deemed a known or obvious danger not because of any characteristic of the pier itself, but rather because of the way the plaintiff chose to walk on it. *Friedrich,* 60 Haw. at 35–36, 586 P.2d at 1040. The court distinguished the disintegrating, narrow ledge of the *Levy* case because there the plaintiff did not have another available route. *Id.* at 37, 586 P.2d at 1041. In *Bidar,* one Judge dissented because he believed the known or obvious danger defense should have controlled the outcome of the case. *Bidar,* 66 Haw. at 560, 669 P.2d at 163.

Defining the danger in the case at bar presents a similar challenge. Outrigger seemed to define the danger as a wet lanai, which most people would recognize as being potentially dangerous, and argued that it is not liable for any injury suffered by Steigman when she chose to encounter that known or obvious danger. Plaintiff defined the dangerous condition as the surface of the lanai. She offered evidence that the lanai's surface did not have the level of slip resistance established by hotel industry standards, and that it was finished with a glossy coating that made it difficult to tell if the surface was wet. Plaintiff argued that a slippery lanai surface was not a known or obvious condition, because an average person could not determine how dangerous it would be to walk on the lanai. The trial court disagreed with Steigman's argument. The court stated that Outrigger was entitled to the known or obvious danger defense because of "the fact that it

was raining, and the plaintiff knew it was raining."

Defining the known or obvious danger as a wet balcony leads to an antithetical result. When it rains, exterior surfaces may become wet, and industry standards requiring non-slip surfaces are established to provide a safe environment even when wet. Allowing landowners to escape liability for injuries caused when guests slip on an untreated surface because the surface was wet—despite the fact that the standards exist to protect people, should the surfaces become wet—is counterproductive. This would provide no incentive for landowners to maintain premises in compliance with safety standards even when the dangers of non-compliance are readily foreseeable. Also, plaintiffs would be unable to recover when injured while premises were in their most dangerous state, even when they could not possibly have known that the surfaces do not comply with ordinary safety standards.

As past cases and the case at bar illustrate, the known or obvious danger defense presents many difficulties to the courts. We note also that courts of our sister states have similarly struggled, and therefore the defense has come under significant criticism. *See Woodard v. ERP Operating Ltd. P'ship*, 351 F.Supp.2d 708, 713 (E.D.Mich.2005) ("The 'open and obvious' doctrine is one of the most litigated areas of Michigan premises liability law. Despite the fact that Michigan courts have decided hundreds of cases involving the doctrine, inconsistent applications of the doctrine have resulted in a confusing jurisprudence.") (footnote omitted); *Rogers v. Spirit Cruises, Inc.*, 195 Misc.2d 335, 760 N.Y.S.2d 280, 282 (App. Term 2003) (characterizing the rule as "ancient" and "oft-criticized"); *Groleau v. Bjornson Oil Co., Inc.*, 676 N.W.2d 763, 773 (N.D.2004) (Maring, J., dissenting in part and concurring in part) ("Therefore, the common law 'no duty' rule or 'open and obvious' doctrine has endured much criticism from both courts and commentators."); *O'Donnell v. City of Casper*, 696 P.2d 1278, 1282 (Wyo.1985) ("This court has not been consistent in its application of the obvious danger rule since comparative negligence."). We acknowledge the dif-

ficulties our courts and the courts of other jurisdictions have experienced in applying the known or obvious defense, and we believe it would be prudent to prevent Hawai'i courts from further embedding this problematic doctrine into our case law.

## C. The Known Or Obvious Danger Defense Is Incompatible with Public Policy

The Mississippi Supreme Court's analysis of the known or obvious danger and tort policy is instructive. As that court explained:

> This Court should discourage unreasonably dangerous conditions rather than fostering them in their obvious forms. It is anomalous to find that a defendant has a duty to provide reasonably safe premises and at the same time deny a plaintiff recovery from a breach of that same duty. The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger.

*Tharp v. Bunge Corp.*, 641 So.2d 20, 25 (Miss.1994). The Kentucky Supreme Court recently agreed with Mississippi's analysis. They cited Mississippi's reasoning for support that abolishing the known or obvious danger defense in favor of comparative negligence "makes good policy sense." *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 391–92 (Ky.2010). This is because a landowner's duty "is predicated upon [his] superior knowledge concerning the dangers of his property," which places the landowner in a better position to anticipate and take action to prevent injury. *Id.* at 392 (quoting *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 502 (S.D.2010)).

██ Approaching torts from a policy perspective is germane to Hawai'i jurisprudence; as this court has written, "tort law is primarily designed to vindicate social policy." *Francis v. Lee Enterprises, Inc.*, 89 Hawai'i 234, 239, 971 P.2d 707, 712 (1999) (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 1, at 5–6 (5th

ed. 1984)) (emphasis omitted). One social policy enacted through the tort system is compensating injured plaintiffs. *Fonseca v. Pacific Const. Co.*, 54 Haw. 578, 584, 513 P.2d 156, 160 (1973) ("a basic premise of tort law is to give adequate protection to persons injured through the unreasonable conduct of others...."). When enacted as a complete bar, the known or obvious defense precludes an injured plaintiff from recovering from even an unreasonable landowner, and opposes this important social policy. Second, tort law seeks to prevent injury where possible by providing incentive to deter negligent acts. *See Smith v. Cutter Biological, Inc.*, 72 Haw. 416, 435, 823 P.2d 717, 727 (1991). Allowing a landowner to escape liability as a matter of law, even when he has not reasonably maintained his premises, provides no such incentive. We therefore conclude that considerations of public policy counsel against permitting the continuation of the known or obvious defense.

### D. In Abolishing The Known Or Obvious Danger Defense, Hawai'i Joins The Majority Of States That Have Considered The Question

Hawai'i is not the first jurisdiction to abolish the known or obvious danger defense. Of the states that have directly considered the question of how the advent of comparative negligence modified the known or obvious defense, the majority held that the known or obvious character of a danger does not automatically absolve a landowner of liability.[3] The analysis typically follows one of two tacks.

The courts that have found the defense incompatible with comparative negligence have analyzed the known or obvious characteristic of the danger either as a component of the landowner's duty, or as a factor to consider when weighing each party's negligence. The former states, following either their own statutes or the Restatement (Second) of Torts, held that the known or obvious defense is not a complete bar to recovery because the known or obvious characteristic of the danger may not always defeat a landowner's duty. These states include Illinois[4], Kentucky[5], Michigan[6], Missouri[7], New Mexico[8], Utah[9], and Tennessee[10]. The latter states held that factfinders should consider the known or obvious quality of a danger as a component of comparative fault, and entirely abolished the defense. These states include Idaho[11], Mississippi[12], Oregon[13], Texas[14], and Wyoming[15].

### 1. States Analyzing The Known Or Obvious Danger Defense As An Aspect Of Duty

Some states that have struck the known or obvious danger defense as a complete bar to liability have held that such a bar is incompatible with landowner duty. These states typ-

3. A minority of states to consider the issue have retained the known or obvious danger defense as a complete bar to recovery. *See O'Sullivan v. Shaw*, 431 Mass. 201, 726 N.E.2d 951, 956–57 (2000); *Harrington v. Syufy Enterprises*, 113 Nev. 246, 931 P.2d 1378, 1380 (1997); *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 788 N.E.2d 1088, 1089 (2003).

4. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 228 (1990).

5. *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 390 (Ky.2010).

6. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 629 N.W.2d 384, 389 (2001).

7. *Harris v. Niehaus*, 857 S.W.2d 222, 226 (Mo. 1993).

8. *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 824 P.2d 293, 295 (1992).

9. *Hale v. Beckstead*, 116 P.3d 263, 267 (Utah 2005).

10. *Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn.1998) (overruled on other grounds).

11. *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321, 1326 (1989).

12. *Tharp v. Bunge Corp.*, 641 So.2d 20, 25 (Miss. 1994).

13. *Woolston v. Wells*, 297 Or. 548, 687 P.2d 144, 149–50 (1984).

14. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978).

15. *O'Donnell v. City of Casper*, 696 P.2d 1278, 1284 (Wyo.1985).

ically adopt the analysis of the Restatement (Second) of Torts, which provides:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

Restatement (Second) of Torts § 343A (1965). Under this framework, the fact that a danger is known or obvious does not eliminate liability as a matter of law. Instead, a landowner has a duty, and comparative negligence principles apply, when the landowner should anticipate harm from a known or obvious danger on his land.

The case of *Ward v. K Mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990), provides illustration. In *Ward*, the plaintiff was exiting a K Mart department store carrying a large item he had just purchased when he walked into a concrete post located directly outside the store's exit. *Id.* at 224. The case went to trial, and a jury delivered a verdict in favor of the plaintiff, but reduced the damages 20% to account for the plaintiff's comparative negligence. *Id.* at 226. However, the circuit court judge entered a judgment for the defendant notwithstanding the jury's verdict, finding that the store owed the plaintiff no duty because the post was open and obvious. *Id.* at 224. A fractured appellate court affirmed, and the plaintiff appealed to the Supreme Court of Illinois. *Id.* The supreme court reinstated the jury's verdict, and held that the open and obvious character of the danger did not automatically negate the store's duty to the plaintiff. *Id.* Instead of an inflexible rule that denied recovery to all injured plaintiffs, the court held that a more nuanced analysis of the circumstances of injury is necessary, in order to determine whether K Mart could have anticipated that the pole would cause

plaintiff's injury. *Id.* In this case, the court believed it was foreseeable that a customer may be injured by the concrete post, so the store had a duty to prevent such injury. *Id.*

The court's analysis turned on the notion that the ability of a plaintiff to recognize a danger depends heavily on the circumstances in which the plaintiff confronts that danger. As the court noted:

there is perhaps no condition the danger of which is so obvious that all customers under all circumstances would necessarily see and realize the danger in the absence of contributory negligence, and this is particularly true if the further principle so often repeated is accepted that the customer or business invitee is entitled to assume that the premises are reasonably safe for his use.

*Id.* at 230 (quoting W. Page Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U.Pa.L.Rev. 629, 642 (1952)). Thus, the fact that a condition is known or obvious is not an absolute bar to recovery, and instead courts of that jurisdiction must engage a more thorough analysis. *Id.* at 299. ("Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact. The trier of fact may also consider whether the plaintiff was in fact guilty of negligence contributing in whole or in part to his injury, and adjust the verdict accordingly.")

Other jurisdictions share the Illinois Supreme Court's view that the known or obvious defense may not be a complete bar to a plaintiff's claim, but rather that a landowner has a duty to protect against, and may be held liable for, foreseeable injuries due to a known or obvious danger. *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 390 (Ky.2010) ("By concluding that a danger was open and obvious, we can conclude that the invitee was negligent for falling victim to it, unless for some reason 'to a reasonable man in his position the advantages of [encountering the danger] would outweigh the apparent risk.' But this does not necessarily mean that the land possessor was not also negligent for failing to fix an unreasonable

danger in the first place. Under our rule of comparative fault, the defendant should be held responsible for his own negligence, if any.") (citation omitted); *Coln v. City of Savannah,* 966 S.W.2d 34, 36 (Tenn.1998) (overruled on other grounds) ("As in any negligence action, we think a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by a defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would prevent the harm. Applying this analysis, if the foreseeability and gravity of harm posed by the defendant's conduct, even if 'open and obvious,' outweigh the burden upon the defendant to engage in alternative conduct, the defendant has a duty to act with reasonable care and the comparative fault principles apply ....") (citations omitted); *Hale v. Beckstead,* 116 P.3d 263, 269 (Utah 2005) ("The open and obvious danger rule in particular simply defines the reasonable care that possessors of land must show toward invitees. Under that definition, a possessor of land must protect invitees against dangers of which they are unaware, may forget, or may reasonably encounter despite the obviousness of the danger.")

To summarize, in states following the Restatement, the fact that a plaintiff was injured due to a known or obvious danger does not automatically bar the plaintiff's claim; in those states, a landowner retains a duty to the plaintiff if the plaintiff's injury was foreseeable.

### 2. *States Analyzing The Known Or Obvious Danger Defense As An Element Of Comparative Fault*

Other jurisdictions have abolished the known or obvious danger defense entirely due to its incompatibility with comparative negligence. The case considered by the Supreme Court of Wyoming, one of the first to abolish the doctrine, provides an apt illustration. In *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985), that court considered the case of a motorcyclist who sustained injuries when his motorcycle slipped on loose gravel on one of the City's streets. *Id.* at 1280. The trial court found that the gravel was open and obvious, and granted the City's motion for summary judgment on the ground that the City owed no duty to warn of an obvious danger. *Id.* at 1281. On appeal, the Supreme Court of Wyoming held that this was error, and reasoned that:

> [t]he City may have been negligent by not properly maintaining the streets, and the negligence of the City, if any, should be compared with the negligence of appellant. Because appellant knew of the obviously dangerous condition of the road he may very well have been negligent, but that is for the trier of fact to determine, and the relative degree of negligence is all important under comparative negligence. Gone are the days when a scintilla of negligence by the plaintiff will bar recovery.

*Id.* at 1283–84. Courts of other jurisdictions have agreed that the defense is irreconcilable with comparative negligence. *Woolston v. Wells,* 297 Or. 548, 687 P.2d 144, 149 (1984) ("Instructing the jury that defendant has no liability because of actions of the plaintiff, or that defendant is liable only if a reasonable person entering the land would not realize a danger or would not protect himself against it, frustrates the purpose of instituting a system of comparative fault."); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 518 (Tex.1978) ("[Comparative Negligence] replaced the harsh system of absolute victory or total defeat of an action by such doctrines as contributory negligence, voluntary assumption of risk, and also the included doctrine known as no-duty. [...] The survival of no-duty (plaintiff's knowledge and appreciation) as a total bar is incompatible with the legislative purpose of the comparative negligence statute.").

In states where the known or obvious danger defense has been abolished, the jury considers the known or obvious character of the danger as one of the many factors relevant to determining each party's comparative negligence. *Joseph v. City of New Orleans,* 842 So.2d 420, 423 (La.Ct.App.2003) ("Simply stated, the open and obvious nature of the defect is merely another factor to be weighed in the risk-utility balance."); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 517 (Tex. 1978) ("The reasonableness of an actor's con-

duct under the circumstances will be determined under principles of contributory negligence."); *Tharp v. Bunge Corp.*, 641 So.2d 20, 25 (Miss.1994) ("We now abolish the so-called 'open and obvious' defense and apply our true comparative negligence doctrine. The jury found that there was negligence in the case at hand; the trial judge erred in construing the open and obvious defense as a complete bar when it really is only a mitigation of damages on a comparative negligence basis under [the state's comparative negligence statute].").

In summary, in states where the known or obvious defense has been completely abolished, the jury need not make a finding regarding whether the danger was known or obvious because such a determination does not operate as an absolute bar to a plaintiff's recovery. Instead, a jury may consider all the facts and circumstances of the injury, and apportion liability by comparing the fault of the landowner and the injured plaintiff.

### E. The Known Or Obvious Defense Is No Longer Viable In Premises Liability Actions

We now hold that the known or obvious defense is not viable in Hawai'i, thus joining the states described in Section III.D.2, supra. In so holding, we reject the Restatement view followed by the states as described in Section III.D.1, supra. As explained above, the Restatement view permits a plaintiff to recover for an injury caused by a known or obvious danger only when her injury was foreseeable. We believe that such a position does not execute the legislative intent behind our state's comparative negligence statute. We further believe that the rule is inconsistent with the case law of this state because it requires the trial judge to usurp duties which should be reserved for the factfinder.

▇ First, as discussed above, Hawaii's Comparative Negligence statute "sought to temper a phase of the common law deemed inconsistent with contemporary notions of fairness." *Wong v. Hawaiian Scenic Tours, Ltd.*, 64 Haw. at 405, 642 P.2d at 933. The legislative purpose of the statute was "to allow one partly at fault in an accident resulting in injury to be recompensed for the dam-

ages attributable to the fault of another if the former's negligence was not the primary cause of the accident." *Id.* Applying the absolute logic of the Restatement precludes an injured plaintiff from recovery based on the Judge's conclusions that a danger was known or obvious and that injury was not foreseeable. This would not afford an opportunity for the plaintiff's fault to be compared to the fault of the landowner. In precluding such comparison, the Restatement would not permit the plaintiff "to be recompensed for the damages attributable to the fault of another if the former's negligence was not the primary cause of the accident."

Second, in rejecting the Restatement view, we join the states that have abolished the known or obvious danger defense in part to affirm the proper role of the jury as factfinder. Those states noted that the determination of whether the known or obvious danger defense applied had been an element of duty analysis, and therefore had fallen to the judge. Many states expressed concern that a judge would decide such a fact-intensive issue. For example, in *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989), the Idaho Supreme Court considered a slip-and-fall case in which plaintiff was injured due to a fault in a sidewalk in front of a store. *Id.* at 1322. The trial court judge found sidewalk's condition to be open and obvious, and granted the store's motion for summary judgment. *Id.* at 1323. The supreme court felt it was inappropriate for such a critical question of fact to be decided by a judge without involvement of a jury. *Id.* at 1328. The court explained:

[t]his discussion points up the major flaw with granting defendants' summary judgment motion based on the open and obvious danger doctrine-a judge not a jury, is thereby ruling on quintessential issues of fact such as whether the injured party knew, or should have known of the danger, the obviousness of the danger, whether there was a justifiable reason for confronting the danger, and so on. However, today's opinion will correct this problem area in our law.

*Id.* Other jurisdictions have expressed similar concerns. *Cox v. J.C. Penney Co., Inc.,*

741 S.W.2d 28, 30 (Mo.1987) ("Under comparative fault, we leave to juries the responsibility to assess the relative fault of the parties in tort actions. Respondent's duty argument fails in this context because it pretermits jury assessment of respondent's fault for failure to maintain the premises in a reasonably safe condition.")

█ We share these concerns. In Hawai'i, the existence of a duty is a question of law. *Bidar v. Amfac, Inc.*, 66 Haw. 547, 552, 669 P.2d 154, 158 (1983). Accordingly, if this court were to retain the known or obvious danger defense as defeating a landowner's duty, it would fall to the judge to decide whether the defense applies. That result is undesirable. As our review of the known or obvious cases shows, the characterization of the danger as known or obvious is fact-intensive and depends on the circumstances involved in each case. We believe such an assessment should be reserved for the jury, unless reasonable minds could not differ. *See id.* at 554, 669 P.2d at 160 (noting that the question of breach must be resolved by a jury if the court is left with "a definite impression that reasonable minds could draw different inferences from the facts and arrive at conflicting conclusions on relevant factual issues.")

## IV. CONCLUSION

█ We hold that the known or obvious danger defense is inconsistent with the legislative intent behind Hawaii's comparative negligence statute. The known or obvious danger defense yields inconsistent results and is incompatible with the policy values underlying Hawaii's tort law. Accordingly, we hold that the known or obvious danger defense is no longer viable in Hawai'i. We reject the Restatement's retention of the doctrine as a factor in determining the landowner's duty, and instead hold that courts of this state may consider any known or obvious characteristics of the danger as factors in the larger comparative negligence analysis. The Intermediate

1. The Application filed by Petitioner presents the following question: "Whether the jury in a negligence action should be specially instructed that [a] defendant is not liable for hazards on its

Court of Appeals' December 16, 2010 judgment on appeal and the Circuit Court of the First Circuit's March 6, 2007 judgment are vacated.

This case is remanded to the trial court for proceedings consistent with this opinion.

## Concurring Opinion by ACOBA, J.

I concur in the outcome reached by the majority in this case, but for the reasons set forth herein. In my view, the known or obvious danger defense (1) is incompatible with Hawai'i's comparative negligence statute because it totally bars a plaintiff's recovery if the plaintiff is contributorily negligent, and (2) does not comport with the general duty of reasonable care owed by a landowner or occupier to those who enter the premises. Consequently, the known or obvious danger defense must be abrogated. Additionally, inasmuch as this case is remanded for a new trial, I would also hold that the circuit court of the first circuit (the court) abused its discretion in allowing, via cross-examination of the plaintiff's experts, admission of multiple hearsay from records reviewed by the experts but not admitted in evidence.

### I.

In her Application for Writ of Certiorari (Application), Petitioner/Plaintiff–Appellant Michele R. Steigman (Petitioner) argues that (1) the known or obvious danger defense "is inconsistent with Hawaii's comparative negligence standard and law regarding landowner liability" and (2) the defense should not be retained in the context of the duty owed by an owner or occupier of land to maintain his or her property.[1] [*Id.* at 6–8]

### II.

As to Petitioner's first argument, our comparative negligence statute, HRS § 663–31 (1993), enacted in 1969, provides in relevant part as follows:

**Contributory negligence no bar; comparative negligence; findings of fact and**

property which are 'known and obvious,' and whether such instruction was warranted on the facts presented at trial herein."

**special verdicts.** (a) *Contributory negligence shall not bar recovery in any action* by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, *if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.* [2] (Emphases added.) Petitioner contends that the statute "allows 'one partly at fault in an accident resulting in injury to be recompensed for the damages attributable to the fault of another.'" (Quoting *Wong v. Hawaiian Scenic Tours, Ltd.,* 64 Haw. 401, 405, 642 P.2d 930, 933 (1982).) According to Petitioner, the known or obvious danger doctrine is inconsistent with HRS § 663–31 because it serves "as a complete bar to recovery based on [the] contributory negligence [of the] plaintiff." (Citing *Young v. Price,* 47 Haw. 309, 318 n. 11, 388 P.2d 203, 209 n. 11 (1963).)

On the other hand, Respondent/Defendant–Appellee Outrigger Enterprises, Inc., dba Ohana Surf Hotel (Respondent), maintains that the doctrine is not inconsistent with HRS § 663–31 because the comparative negligence analysis applies "only after the defendant is found to have been negligent," while the known or obvious danger defense precludes a duty of care on the part of the defendant to the plaintiff, thereby barring any finding of a defendant's negligence. According to Respondent, "[w]here the defendant has not been found to be negligent, the comparative negligence analysis is moot," and, as a result, cannot conflict with the known or obvious danger defense.

The issue arose because in the instant case, the court gave the following instruction on the known or obvious danger defense, fashioned after *Restatement (Second) of Torts* (Restatement) § 343A (1965) [3] and comment b to the same section [4]:

A hotel operator is not liable to its guests for physical harm caused to them by any activity or condition in the hotel whose danger is known or obvious to them, unless the hotel operator should anticipate the harm despite such knowledge or obviousness.

The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist,

2. HRS § 663–31 continues as follows:

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:
(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and
(2) The degree of negligence of each party, expressed as a percentage.
(c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.
(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

3. Restatement § 343A provides in relevant part:

§ 343A. Known Or Obvious Dangers. (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

4. The second paragraph of the instruction is almost verbatim comment b to Restatement § 343A (1965).

Comment b to Restatement § 343A provides:
The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the guest, exercising ordinary perception, intelligence, and judgment.

(Emphasis added.)

### A.

Prior to adopting a comparative negligence regime, the cases in our jurisdiction would seem to have viewed the known or obvious danger defense as barring any recovery because of the plaintiff's contributory negligence. In *Young*, the plaintiff brought suit after she tripped and fell over a green hose placed across a sidewalk by the defendants. This court concluded that the plaintiff was contributorily negligent because "one who fails to see and avoid an obvious obstruction in or on sidewalk just ahead in plain sight is guilty of contributory negligence as a matter of law." 47 Haw. at 317, 388 P.2d at 208. Quoting comment b to Restatement § 474 (1965), this court stated:

"[I]f the plaintiff would have observed the dangerous condition in time to avoid it, had he been paying that attention, which, in view of the normal risks of travel, a traveler should have paid, *his contributory negligence in failing to exercise such reasonable vigilance is a bar to his recovery.*"

*Id.* at 318 n. 11, 388 P.2d at 209 n. 11 (emphasis added).

In *Gelber v. Sheraton–Hawaii Corp.*, 49 Haw. 327, 327, 417 P.2d 638, 639 (1966), the plaintiff brought suit for damages in connection with injuries sustained after she tripped and fell as she was descending the steps in the main entrance of the defendant's (Shera-

ton) hotel. The plaintiff argued that the court's instruction on the known or obvious danger doctrine was "prejudicial" error because the instruction was not supported or warranted by the evidence adduced at trial.[5] *Id.* at 329–30, 417 P.2d at 640. Because there was nothing in the record to suggest that "the steps where the fall occurred constituted an obvious danger[,]" the *Gelber* court determined the instruction was prejudicial because it "intimate[d] or suggest[ed] that the danger presented at [Sheraton's] premises might have been *obvious and [the plaintiff] might therefore have been contributorily negligent.*" *Id.* at 330, 417 P.2d at 640 (internal quotation marks and citations omitted) (emphasis added).

However, our comparative negligence statute mandates that one's "[c]ontributory negligence shall not bar recovery in any action" so long such person's "negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought[.]"[6] HRS § 663–31(a). Thus, unlike the known or obvious danger defense under which a plaintiff is completely barred from recovery if he or she was negligent, in any respect, in choosing to encounter the known or obvious danger, HRS § 663–31 bars recovery *only if* the negligence of the plaintiff was greater than that of the defendant.

### B.

Although the statutory language of HRS § 663–31 is plain and unambiguous, we may resort to the legislative history to confirm this interpretation of the statute. *See E & J Lounge Operating Co. v. Liquor Comm'n of City & County of Honolulu,* 118 Hawai'i 320, 335, 189 P.3d 432, 447 (2008) ("Legislative history may be used to confirm interpreta-

---

5. The plaintiff objected to the portion of the instruction which stated, "And the owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses. *There is no duty to give the invitee notice of an obvious danger." Gelber,* 49 Haw. at 329, 417 P.2d at 640 (emphasis added).

6. "It is well-established that, where a statute contains the word 'shall,' the provision generally will be construed as mandatory." *Malahoff v. Saito,* 111 Hawai'i 168, 191, 140 P.3d 401, 424 (2006) (citations omitted); *see also Leslie v. Bd. of Appeals of County of Hawaii,* 109 Hawai'i 384, 393–94, 126 P.3d 1071, 1080–81 (2006) ("Where a statute contains the word "shall," its provisions are generally to be construed as mandatory or imperative.").

tion of a statute's plain language."); *State v. Entrekin*, 98 Hawai'i 221, 228, 47 P.3d 336, 343 (2002) ("Although we ground our holding in the statute's plain language, we nonetheless note that its legislative history confirms our view.") In enacting HRS § 663-31, the legislature noted that the rule of contributory negligence "bar[red] recovery by the injured party if it is shown that he, to any degree, contributed to his injuries." H. Stand. Comm. Rep. No. 397, in 1969 House Journal, at 778. HRS § 663-31 was enacted to "replace the common law doctrine of contributory negligence with a comparative negligence statute" because the legislature perceived the rule of contributory negligence "to be unfair and in opposition to the average person's concept of justice." *Id.* It was explained by the legislature that "[a] comparative negligence law would rectify this unfairness by providing that the court or jury compare the fault of the defendant with the fault of the plaintiff, if any, and scale down recovery in the amount of negligence attributable to the plaintiff"; "[o]nly if the evidence showed that the fault of the plaintiff was as great or greater than that of the defendant, would recovery be barred." *Id.* at 778–79.

Insofar as the known or obvious danger defense entirely precludes recovery because of the plaintiff's contributory negligence, it is incompatible with the comparative negligence statute. The defense does not provide a plaintiff with the opportunity to have "the court or jury compare the fault of the defendant with the fault of the plaintiff[.]" *Id.* Unlike our statute, the known or obvious danger defense "bars recovery by the injured party if it is shown that he, to any degree, contributed to his injuries[,]" a result HRS § 663-31 was specifically designed to avoid. *Id.* at 778. Thus, the defense no longer remains viable in light of HRS § 663-31. *Cf. Rapoza v. Parnell*, 83 Hawai'i 78, 81–82, 924 P.2d 572, 575–76 (App.1996).

In *Rapoza*, the ICA considered whether the "last clear chance" doctrine survived HRS § 663-31. *See id.* The *Rapoza* court explained that "[p]rior to the adoption of HRS § 663-31, all claims of negligence in Hawai'i were subject to the common law defense of contributory negligence[,]" which

as stated, barred recovery to a plaintiff if it was shown that the plaintiff was negligent to any degree. *Id.* at 82, 924 P.2d at 576 (citing *Armstrong v. Cione*, 6 Haw.App. 652, 657, 736 P.2d 440, 444 (1987) (citing *Pacheco v. Hilo Elec. Light Co.*, 55 Haw. 375, 520 P.2d 62 (1974))). "An exception to the defense of contributory negligence was the common law doctrine of last clear chance—a doctrine judicially created to mitigate the harsh results of contributory negligence." *Id.* (citing Prosser, *Law of Torts* § 65, at 438 (3d ed. 1964) [hereinafter, Prosser, *Torts* ]). Under that doctrine, even if the plaintiff was negligent, his or her negligence would not defeat recovery if it could be shown that the defendant had the last clear chance to avoid the injury to the plaintiff. *See id.*

*Rapoza* acknowledged that "[n]othing in the language or legislative history of HRS § 663-31 explicitly abolishe[d] the last clear chance doctrine." *Id.* However, the ICA observed that the doctrine had "been severely criticized for being harsh as well as archaic in light of modern ideas of proximate causation[ ]" because if it applied in a particular case, "the entire burden [wa]s shifted back onto the defendant who must then pay the full amount of the plaintiff's damages despite the fact that the plaintiff was negligent." *Id.* at 83, 924 P.2d at 577. The ICA noted that, in contrast, "HRS § 663-31 allows for an apportionment of damages provided that the plaintiff's negligence is not greater than the defendant or defendants." *Id. Rapoza* concluded that the last clear chance doctrine was no longer viable because "the purpose of the last clear chance doctrine is to mitigate the harsh results of contributory negligence," but the doctrine of contributory negligence had been abolished in Hawai'i. *Id.* Accordingly, it was determined that HRS § 663-31 rendered the last clear chance doctrine obsolete, and, thus, the doctrine was judicially abolished. *Id.*

Similar to *Rapoza*, because the contributory negligence doctrine has been abolished, the known or obvious danger doctrine, a variant of contributory negligence, is no longer viable. Under HRS § 663-31, a plaintiff is not completely barred from recovery simply because he or she is negligent. Accord-

ingly, as with the last chance doctrine, HRS § 663–31 has rendered the known or obvious danger defense obsolete and it must therefore be abrogated. The court's instruction on this defense, then, constituted reversible error.

## III.

### A.

In connection with her second argument, Petitioner contends that the known or obvious danger defense should not be retained with respect to the duty owed by an owner or occupier of land to those who enter the premises. According to Petitioner, although one may not have a duty to warn of known or obvious dangers under the doctrine, the fact that a danger is known or obvious should not obviate the obligation of a landowner or occupier of land to rectify or correct such dangers. Respondent suggests, however, that the doctrine should be retained because it specifically concerns the existence of a defendant's duty of care, which must be established as part of a plaintiff's prima facie case before any comparative negligence analysis can be performed.

While, as noted, some cases in this jurisdiction have discussed the defense in terms of barring a plaintiff's recovery on account of the plaintiff's contributory negligence, the defense has also been applied in terms of the duty owed by an owner or occupier of land to those who enter the premises. With respect to landowners' or occupiers' duty, in *Pickard v. City & County of Honolulu,* 51 Haw. 134, 135, 452 P.2d 445, 446 (1969), this court

abolished the common law distinctions between classes of persons (licensee/invitee) with regard to the duty owed by an owner or occupier of land to those who enter the premises. This court stated, "We believe that the common law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others." *Id.* According to *Pickard,* " '[a] man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose' " and " '[r]easonable people do not ordinarily vary their conduct depending upon such matters[.]' " *Id.* at 136, 452 P.2d at 446 (quoting *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968)).

Thus, in the view of the *Pickard* court, " '[t]o focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values.' " *Id.* (quoting *Rowland,* 70 Cal.Rptr. 97, 443 P.2d at 568). In accordance with the foregoing, this court held that "an occupier of land has a *duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises,* regardless of the legal status of the individual." *Id.* at 135, 452 P.2d at 446 (emphasis added).

Then, in *Friedrich v. Dep't of Transp.,* 60 Haw. 32, 33, 586 P.2d 1037, 1038 (1978), *superceded in non-relevant part by statute,*[7]

---

7. In *Friedrich,* this court stated:

> Where the government maintains land upon which the public are invited and entitled to enter, it "may reasonably assume that members of the public will not be harmed by known or obvious dangers *which are not extreme,* and which any reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid."

60 Haw. at 36–37, 586 P.2d at 1040 (quoting comment g to Restatement § 343A) (emphasis added). In *Bhakta v. County of Maui,* 109 Hawai'i 198, 214–15, 124 P.3d 943, 959–60 (2005), it was explained that Act 190, enacted in 1996, provides that where the State or county operates a public beach park, it " 'shall have a duty to warn the public specifically of dangerous shore-

break or strong current in the ocean adjacent to a public beach park *if these conditions are extremely dangerous,* typical for the specific beach, and if they pose a risk of serious injury or death.' " (Quoting 1996 Haw. Sess. L. Act 190, § 2(a), at 435.) (Emphasis added.) According to *Bhakta,* "[u]nder the plain language of section 2(a) [of Act 190], the State is required to warn of 'extremely dangerous' ocean conditions (1) that occur at public beach parks, (2) *if these conditions are typical for the specific beach, and (3) if they present a risk of serious injury or death." *Id.* (emphasis omitted). *Bhakta* noted that "in promulgating Act 190, the legislature expressly provided that the State and counties are not subject to any other duty to warn of dangerous natural ocean conditions, 'other than as provided in [Act 190.]' " *Id.* (brackets in original) (quoting

*Pickard* was seemingly qualified. In that case, the plaintiff brought suit to recover for injuries, leaving him paralyzed from the neck down, sustained when he fell into shallow water from a State-owned pier in Hanalei, Kauai. *Id.* at 33, 586 P.2d at 1038. At the time of the accident, the pier was in a deteriorated condition. *Id.* at 33, 586 P.2d at 1038–39. The Plaintiff was wearing slippers. He testified at trial that he slipped off the pier while attempting to avoid stepping into puddles, acknowledging that it would have been slippery and dangerous to walk through the puddles. *Id.* at 34, 586 P.2d at 1039.

The trial court first rendered a finding that the danger of slipping off the pier was a danger that "was in fact obvious to [the plaintiff], and that he was fully aware, when he chose his path, both of the conditions which created the risk of his accident and of the risk that he might slip and fall if he stepped into the puddle." *Id.* at 35–36, 586 P.2d at 1040. The trial court concluded that the plaintiff's negligence was equal to or, in excess of, the State's negligence.

This court, however, viewed the outcome in terms of the duty owed by the State. It was posited that the duty of care owed by an owner or occupier of land to all persons reasonably anticipated to be upon the premises neither "*require[s] the elimination of known or obvious hazards* which [one] would reasonably be expected to avoid[,]" *id.* at 36, 586 P.2d at 1040 (citing *Restatement (Second) of Torts* § 343A (1965)) (emphasis added),[8] or a duty to warn of such dangers, except for certain specific circumstances,[9] *id.* at 36–37, 586 P.2d at 1040. Because the danger of slipping off the pier was obvious, this court concluded that the State did not breach its duty of care toward the plaintiff. *Id.* at 37, 586 P.2d at 1041; *see also Harris v. State*, 1 Haw.App. 554, 557, 623 P.2d 446, 448 (1981) (noting that this court "has held that in a negligence action against the State, the duty of care which the State, as an occupier of the premises[,] owed to the appellant does not require the elimination of known or obvious hazards which are not extremes and which appellant would reasonably be expected to avoid") (citing *Friedrich*, 60 Haw. at 32, 586 P.2d at 1037).

One might argue that the known or obvious danger doctrine does not conflict with our comparative negligence statute because HRS § 663–31 is implicated only if both the plaintiff *and* defendant are negligent, and if the owner or occupier of land has no duty to warn of, or eliminate, known or obvious dangers, the owner or occupier cannot be deemed negligent. The ICA in fact rested its conclusion that the defense was not in conflict with HRS § 663–31 on the ground that "[t]he known or obvious [danger] doctrine is determinative of the threshold issue of defendant's negligence, and more specifically, whether the defendant possessor of land owes a legal duty to the injured party." *Steigman v. Outrigger Enters., Inc.*, No. 28473, 2010 WL 4621838, at *3 (App. Nov. 16, 2010) (SDO) (citing *Harris*, 1 Haw.App. at

---

1996 Haw. Sess. L. Act 190, § 2(f) at 435) (emphasis omitted). Therefore, this court found the plaintiffs' argument "that the State has a common law duty to warn of 'extremely dangerous' ocean conditions" to be "without merit." and held that "*[t]o the extent that Friedrich ... may be read as conflicting with the legislature's decision to limit the State and counties' duty to warn of 'extremely dangerous conditions' at only public beach parks ... Friedrich ... [is] superseded by Act 190.*" *Id.* (emphasis added). Such "extremely dangerous conditions" are not relevant to the facts of this case. Accordingly, *Friedrich* is authority that is contrary to Petitioner's position.

8. The comment to Restatement § 343A suggests, to a certain extent, that the defense does concern the duty of a landowner or occupier: Because "[t]he possessor of land may reasonably assume [that one who enters] will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so[,]" "*[r]easonable care on the part of the possessor ... does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.*" Comment e to Restatement § 343A (emphasis added).

9. *Friedrich* distinguished *Levy v. Kimball*, 50 Haw. 497, 443 P.2d 142 (1968). In *Levy*, unlike in *Friedrich*, the State was held to "a duty to maintain" a seawall "used as a public thoroughfare[.]" *Id.* at 499, 443 P.2d at 144. This court indicated the duty fell within the exception that "the obvious dangers could not be readily avoided" by the plaintiff. *Friedrich*, 60 Haw. at 37, 586 P.2d at 1040.

557, 623 P.2d at 448).[10] According to the ICA, "if the finder of fact determines that the hazard falls within the known or obvious [danger] doctrine, the question of comparative negligence is never reached as the defendant owes no duty to the plaintiff, and accordingly, cannot be negligent as a matter of law." *Id.* In other words, "[i]n the absence of a legal duty owed to the plaintiff, there is no negligence to compare under HRS § 663–31." *Id.*

### B.

However, assuming *arguendo*, that the known or obvious danger doctrine in defining the duty owed by the landowner does not conflict with HRS § 663–31, this court may consider the continuing vitality of *Friedrich. Rodrigues v. State,* 52 Haw. 156, 170, 472 P.2d 509, 518–19 (1970); *accord Blair v. Ing,* 95 Hawai'i 247, 259, 21 P.3d 452, 464 (2001). "Duty ... is a legal conclusion which depends upon 'the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Rodrigues,* 52 Haw. at 170, 472 P.2d at 518 (quoting Prosser, *Torts* § 53 at 332); *accord Pulawa v. GTE Hawaiian Tel.,* 112 Hawai'i 3, 12, 143 P.3d 1205, 1214 (2006); *McKenzie v. Hawai'i Permanente Med. Group, Inc.,* 98 Hawai'i 296, 301, 47 P.3d 1209, 1214 (2002); *Blair,* 95 Hawai'i at 259, 21 P.3d at 464; *Lee v. Corregedore,* 83 Hawai'i 154, 166, 925 P.2d 324, 336 (1996); *Johnston v. KFC Nat. Mgmt. Co.,* 71 Haw. 229, 232, 788 P.2d 159, 161 (1990); *Cootey v. Sun Inv., Inc.,* 68 Haw. 480, 484, 718 P.2d 1086, 1090 (1986); *Hayes v. Nagata,* 68 Haw. 662, 667, 730 P.2d 914, 917 (1986); *First Ins. Co. of Hawaii, Ltd. v. Int'l Harvester Co.,* 66 Haw. 185, 189, 659 P.2d 64, 67 (1983); *Waugh v. Univ. of Hawaii,* 63 Haw. 117, 135, 621 P.2d 957, 970 (1980); *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. 204, 207, 532 P.2d 673, 675 (1975). In this case, policy considerations would weigh in favor of recognizing that the duty of reasonable care owed by landowners and occupiers applies to circumstances traditionally giving rise to a

known or obvious danger defense. Thus, *Friedrich* should be overruled insofar as it held that a landowner or occupier owes no duty of care, with respect to known or obvious dangers, to those reasonably anticipated to enter one's premises, no matter the circumstances.

First, *Friedrich* would appear to have departed from the governing reasonable care standard set forth in *Pickard. Pickard* sought to eliminate distinctions with respect to owner or occupier duty, making clear that there is only one standard of care owed by an owner or occupier of land: "reasonable care for the safety of all persons reasonably anticipated to be upon the premises[.]" *Pickard,* 51 Haw. at 135, 452 P.2d at 446. The duty formulated in *Pickard* rested on policy considerations eschewing outdated legal classifications, affirming the value of life and limb, and crediting ordinary conduct and expectations. In light of that duty, "there is no fixed standard of the requirement of reasonable or ordinary care. Its measure is not accurately defined by statute or decision. Manifestly the requirements are not, and cannot be the same under all circumstances, and in all places." *Kellett v. City & County of Honolulu,* 35 Haw. 447, 453 (Haw.Terr.1940) (internal quotation marks and citation omitted). "What is such care, therefore, in a given case is necessarily dependent on the particular facts developed in the judicial investigation." *Id.* (internal quotation marks omitted).

There is authority that concedes a known or obvious condition should not completely absolve a landowner or occupier from its duty to take reasonable care. Rather, the nature of a particular condition is a factor to be considered in deciding whether the defendant failed to take the care that was reasonable under the circumstances. For example, as explained in comment e to Restatement § 343A, "[r]easonable care on the part of the possessor [ ] does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover

---

**10.** *Harris* states the general proposition that there is no duty to eliminate known or obvious dangers, but does not use this principle in reaching its conclusion that the defendant did not have

actual or constructive notice of the conditions that allegedly caused the plaintiff's injuries. 1 Haw.App. at 557–58, 623 P.2d at 448–49.

them." However, there are "cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." Restatement § 343A cmt. f. According to the comment, in those cases, "the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection." Rather, the duty of reasonable care "may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity," if, for example, "the possessor has reason to expect that the invitee will nevertheless suffer physical harm." *Id.*

In a similar vein, it has been explained that, "in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent that he may reasonably be expected to discover them" and protect himself against such danger. W. Keeton, et al., *Prosser & Keeton on Torts* § 61, at 427 (5th ed. 1984) (footnotes omitted). However, "this is certainly not a fixed rule, and all of the circumstances must be taken into account." *Id.* For example, "where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge ... or the obvious nature of the condition, something more in the way of precautions may be required." *Id.* (footnote omitted).

To perpetuate specific exceptions to the known or obvious danger doctrine, *see Friedrich*, 60 Haw. at 36, 586 P.2d at 1040, seems contrary to the governing reasonable care standard set forth in *Pickard* and the policy considerations supporting that case. In the *Pickard* framework, whether a danger is known or obvious should be viewed as a *factor*, along with other circumstances, in determining whether the landowner or occupier breached its "duty of reasonable care for the safety of all persons reasonably anticipated to be upon the premises[,]" rather than as a rule excusing the exercise of any care. 51 Haw. at 135, 452 P.2d at 446. This would be consonant with the truism that what is due "care ... in a given case is ... dependent on the particular facts." *Kellett*, 35 Haw. at 453.

*Bidar v. Amfac Inc.*, 66 Haw. 547, 669 P.2d 154 (1983), decided after *Friedrich*, further supports this approach. In *Bidar*, the plaintiff brought an action against a hotel owner and operator for injuries incurred when she grabbed a towel bar affixed to the wall as she attempted to pull herself up from the toilet. *Id.* at 549, 669 P.2d at 157. This court considered whether the trial court properly granted summary judgment as to the plaintiff's negligence claim. *Id.* at 547–49, 669 P.2d at 157.

In the opinion of the dissent in *Bidar*, summary judgment was appropriate because pursuant to *Friedrich*, the duty of care owed by an occupier of premises to those who enter the premises " 'traditionally does not require the elimination of known or obvious hazards which [the] appellant would reasonably be expected to avoid.' " *Id.* at 559, 669 P.2d at 162 (Circuit Judge Spencer assigned by reason of vacancy, dissenting) (quoting *Friedrich*, 60 Haw. at 36, 586 P.2d at 1040). According to the dissent, "the defendant ... was perfectly reasonable in assuming that the plaintiff would know better than to use a towel rack as if it was designed and intended to support the weight of a person" and, therefore, could not "be said to have breached a duty of reasonable care owed to [the] plaintiff merely by maintaining a towel rack, on a wall next to the toilet, which could not support the weight of a person." *Id.* at 560, 669 P.2d at 163.

A majority of this court, however, did not adopt such an approach and reinforced the principle that " '[a]n occupier of land ... has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises.' " *Id.* at 552, 669 P.2d at 159 (quoting *Pickard*, 51 Haw. at 135, 452 P.2d at 446). *Bidar* declared that "there unquestionably is a duty owed by the hotel operator to maintain a bathroom adjoining a hotel room in a reasonably safe condition for the use of the guest." *Id.* Thus, according to *Bidar*, "[w]hether it was foreseeable that a guest would grab a towel bar within easy reach for support in rising from a toilet seat is in our view a genuine issue of material fact that ought to be left for jury consideration." *Id.* at 554, 669 P.2d at 160. It was ultimately

held by this court that the trial court erred in summarily disposing of the plaintiff's negligence claim. *Id.*

As elucidated by the foregoing discussion, the duty owed by a landowner or occupier to those who enter his, her, or its premises should be that of reasonable care, as defined by the circumstances.[11] The rule set forth in *Friedrich* absolving a landowner or occupier of a duty of care as to known or obvious dangers does not comport with the reasonable care standard. Therefore, *Friedrich* must be overruled.

### C.

As noted *supra*, while it may be argued that the known or obvious danger defense does not conflict with the face of HRS § 663-31 insofar as it relates to the duty of a landowner or occupier, even in the duty context, the defense runs afoul of the policies embodied by HRS § 663-31 and the legislative intent thereof. Whether the defense is couched in terms of a plaintiff's contributory negligence or landowner or occupier duty, the distinction is not material under the mandate of HRS § 663-31. With respect to contributory negligence, a plaintiff is barred from recovery if the defense applies because he or she was contributorily negligent in choosing to encounter a particular danger, notwithstanding his or her appreciation of the risks involved. As the doctrine operates with respect to duty, a landowner or occupier owes no duty to remedy or warn of known or obvious dangers, because a landowner can reasonably assume that if one who enters the subject premises is injured by such danger, that person would either be negligent in failing to notice and appreciate the risk, or would have voluntarily assumed the risk of harm. In that regard, the known or obvious danger defense, in terms of duty, cannot be readily distinguished from the basis for imputing negligence to the plaintiff. Whether the defense is said to go to a plaintiff's contributory negligence or to landowner or occupier duty, the fact that a danger is deemed known or obvious serves as a complete bar to a plaintiff's recovery; a proposition the legislature rejected by enacting HRS § 663-61. *See supra.* Accordingly, the known or obvious danger doctrine should not be retained in the context of landowner or occupier duty.

### IV.

The majority concludes that the known and obvious danger doctrine should not be retained in the context of duty, in part, based on its conclusion that the doctrine is "fact-intensive" and that "such assessment should be reserved for the jury[.]" *Majority opinion* at 32. However, here, it is not the dichotomy between the judicial function and the jury function (or the law and the fact-finding functions) that dictates abrogation of the known and obvious danger doctrine. *See id.* Rather, as stated *supra*, the known and obvious danger doctrine is tied to contributory negligence, *see Gelber,* 49 Haw. at 327, 417 P.2d at 639 and *Young,* 47 Haw. at 317, 388 P.2d at 208, which has been abolished in this state. Following the rationale of Hawai'i precedent, the known and obvious danger doctrine must be abolished as well. *See e.g., Rapoza,* 83 Hawai'i at 81-83, 924 P.2d at 575-77. In other words, as Hawai'i cases have developed, the sum total of policy considerations

---

11. Other courts have considered additional policy reasons for abolishing the doctrine in the context of landowner or occupier duty. For example, Petitioner points to *O'Donnell v. City of Casper,* 696 P.2d 1278, 1283 (Wyo.1985), in which the Supreme Court of Wyoming stated, "A rule of law which provides that one who creates a known and obvious danger has no duty to correct it because it is known and obvious is not rational." It was stated:

> Such a rule would not discourage a city from creating or allowing the continued existence of a great and obvious danger. It is not logical to hold that if the city digs an immense hole in the road that can be seen a block away, that its

duty to keep the roads safe vanishes. On the other hand, if the city digs a small hole not easy to see, its duty remains. In other words, the bigger the hole the lesser the duty.

*Id.*

The Supreme Court of Texas, in overruling the doctrine, reasoned in part that (1) the "no-duty" rule has "contributed confusion" and (2) "[t]he no-duty rule imports a plaintiff's subjective knowledge of a condition into an objective general duty rule[,]" which "runs counter to the traditional resolution of liability that is determined by objective standards of negligence." *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 518-19 (Tex.1978).

leads the law to say that plaintiffs are entitled to a comparison of fault even in what would be traditional known or obvious danger contexts. *Rodrigues,* 52 Haw. at 170, 472 P.2d at 518 (explaining that duty is a legal conclusion depending upon the sum total of policy considerations that lead the law to say that the particular plaintiff is entitled to protection). Thus, respectfully, it is the standard of duty owed that defines the role of the judge and the jury rather than, as the majority posits, the supposed "fact-intensive" nature surrounding known and obvious danger situations. Majority opinion at 1263, 1264.

Consequently, the duty that displaces the doctrine that there is no duty in known and obvious danger situations, is that of "reasonable care [owed by the landowner or occupier] for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." *Pickard,* 51 Haw. at 135, 452 P.2d at 446.[12] The facts and circumstances surrounding what may have been viewed historically as a known and obvious condition are germane because they shape the contours of care required under the test expressly set forth in *Pickard;* not because such conditions may be "fact-intensive." Majority opinion at 1263, 1264.

V.

On appeal to the ICA, Petitioner raised a question as to whether it is permissible on cross-examination for an expert to read into the record hearsay statements derived from an employment record not introduced into evidence but reviewed by experts in the course of forming their opinions. The court

allowed such hearsay to be read over Petitioner's objection. Respectfully, in my view the ICA incorrectly affirmed the court.

Inasmuch as this case is remanded for a new trial, it is incumbent upon this court to decide this question. I must disagree with the majority that the issue is "no longer relevant to this appeal[,]" majority opinion at 1254, although not expressly raised in Petitioner's Application.[13] If the issue is not addressed by this court, the case will be remanded and retried on erroneous evidentiary grounds since the ICA decision on this question remains in effect. This court has provided guidance to courts regarding erroneous evidentiary rulings and other matters in similar circumstances. *See e.g., State v. Wakisaka,* 102 Hawai'i 504, 507, 518, 78 P.3d 317, 320, 331 (2003) (although not dispositive, stating that the circuit court erroneously excluded testimony "in order to provide some guidance to the circuit court on retrial") and *State v. Culkin,* 97 Hawai'i 206, 211, 35 P.3d 233, 238 (2001) ("provid[ing] guidance on remand" and holding that, "the circuit court abused its discretion by permitting the prosecution to cross-examine [the defendant] about multiple false identification cards discovered at his house with foreknowledge that [the defendant] intended to invoke his fifth amendment privilege if questioned about them"); *see also State v. Nichols,* 111 Hawai'i 327, 340–341, 141 P.3d 974, 987–88 (2006) ("provid[ing] guidance to the circuit court on remand" regarding jury instructions); *KNG Corp. v. Kim,* 107 Hawai'i 73, 74–75, 110 P.3d 397, 398–99 (2005) ("Because we remand the case, we conclude, for guidance of the court, that [the statute] does not

---

**12.** It may be noted, that Restatement § 343A refers to the concept of foreseeability, in terms of whether or not harm to a person entering one's property should have been foreseeable to the landowner or occupier in spite of the known or obvious nature of the danger. Foreseeability is not relevant to the issue presented in this case—whether the known and obvious danger doctrine should be abolished. Because the standard of care that applies is "reasonable care for the safety of *all persons reasonably anticipated to be upon the premises[,]" Pickard,* 51 Haw. at 135, 452 P.2d at 446 (emphasis added), foreseeability is already accounted for in the *Pickard* test. *See Pulawa v. GTE Hawaiian Tel,* 112 Hawai'i 3, 13,

143 P.3d 1205, 1215 (2006) (explaining that "[t]he risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care") (internal quotation marks and citation omitted).

**13.** The issue was raised, preserved and addressed by the courts below and was also discussed during this court's oral argument. *See* OA 5/5/11 at 24:00–21, *available at* http://www.courts.state.hi.us/courts/oral_arguments/recordings_archive.html.

violate the due process and equal protection clauses of the state and federal constitutions."); *Gap v. Puna Geothermal Venture,* 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004) ("offer[ing] guidance to the circuit court in setting an appropriate sanction on remand"); *State v. Aganon,* 97 Hawai'i 299, 303, 36 P.3d 1269, 1273 (2001) ("examin[ing the defendant's] remaining arguments on appeal" regarding the propriety of jury instructions given "[i]n order to provide guidance to the circuit court on remand").

Moreover, the question should be decided for purposes of judicial economy. If the court's evidentiary ruling is challenged again on appeal following remand, it would seem apparent that this court would need to consider the issue anew. *See Commonwealth v. Moose,* 529 Pa. 218, 602 A.2d 1265, 1276 n. 11 (1992) (stating that, although not dispositive, because "we have reversed this case and remanded it for a new trial[,]" "principles of judicial economy encouraged us to reach the issue of whether [the defendant's] Sixth Amendment rights were violated" because we may "possibly be faced with it again, should [the same conduct occur during] retrial"); *see also Loup–Miller v. Brauer & Assocs.–Rocky Mountain, Inc.,* 40 Colo.App. 67, 572 P.2d 845, 847 (Colo.Ct.App.1977) (although an issue was not properly raised "in [the] plaintiffs' motion for a new trial[,]" the appellate court addressed the issue on the merits, "[s]ince the case must be retried, and the problem will arise again[.]"); *see also Ryan v. Hazel Park,* 279 Fed.Appx. 335, 339, No. 07–1659, 2008 WL 2130370, at *4 (6th Cir.2008) (noting that "where the trial court addressed the issue and both parties briefed the issue, judicial economy requires" the court to address it, "rather than forcing the parties to raise it with the district court anew on remand"). Finally, if the ICA's erroneous ruling allowing for inadmissible information to be elicited from an expert during cross examination is not remedied, trial courts may rely on the ICA opinion for guidance, despite its wrong application of the Hawai'i Rules of Evidence (HRE). *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(c) (stating that "unpublished dispositional orders are not precedent, but may be cited for persuasive value").

## VI.

### A.

During trial, on November 1, 2006, Petitioner's expert witness, Dr. Michael Ferrante (Ferrante), a physician specializing in pain medicine, was asked on cross examination whether Petitioner's termination for timecard fraud would affect his opinion about her credibility:

> [RESPONDENT'S COUNSEL]: Make any difference to you why [Petitioner] was fired from her job?
>
> [FERRANTE]: No.
>
> [RESPONDENT'S COUNSEL]: If she was fired from her job—
>
> [PETITIONER'S COUNSEL]: Objection, Your Honor. THE COURT: Overruled.
>
> [RESPONDENT'S COUNSEL]: —for time[ ]card—
>
> [PETITIONER'S COUNSEL]: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> [RESPONDENT'S COUNSEL]: If she was fired from her job for time[ ]card fraud in reporting hours that she did not work for certain weeks in September of 2005, would that indicate to you that there was a problem with her credibility?
>
> [PETITIONER'S COUNSEL]: Objection, your Honor.
>
> THE COURT: Overruled.
>
> [FERRANTE]: Not necessarily. . . .

On November 2, 2006, Petitioner's counsel "put on the record" his "continuing objections" to any questions "dealing with" "time[ ]card fraud, excessive phone use, and insubordination."[14] He sought to strike the questions and respective answers elicited

---

14. One employment document, Exhibit 204, stating that Petitioner had engaged in over billing, excessively used the phone, was insubordinate, and had poor performance, with the result of termination, was not admitted into evidence, but was admitted for identification. However, Exhibit 204–A, stating that Petitioner had received a warning on April 4, 2005 because she was "not happy to work," was admitted during the cross examination of Petitioner on November 9, 2006.

from Ferrante, and argued that employment records containing the reasons for termination could only be admitted "through a live witness with personal knowledge" of the information contained in the employment records. The court directed Respondent to "[a]void using the language that's on those [employment] documents until you get the documents into evidence."

On November 3, 2006, the direct examination was conducted of Stanley Owings (Owings), an expert "in the field of vocational rehabilitation[.]" Owings was retained by Petitioner on May 8, 2006, for the purpose of formulating a "vocational rehabilitation plan" for Petitioner. In his May 26, 2006 report, Owings explained that Petitioner had been in the workforce for about 26 years, and was injured in May 2005. Pursuant to his interview or "discussion with [Petitioner]," he understood that, in September 2005, during her employment as a traffic control supervisor, "she had a disagreement with someone," and "basically was fired." However, Owings explained that Petitioner told him she had attempted to find another job, but could not find one that was "physically appropriate[.]" Owings determined that "sedentary employment" was "critical" for Petitioner and he advised her to either pursue a bachelor's degree program, or attend a community college.

### B.

On November 3, 2006, during cross examination of Owings, Respondent's counsel asked him to explain a document entitled "[Petitioner's] file chronology," (chronology) that was attached to his report. He was then asked to "read" the "first entry" of the chronology, to which Petitioner's counsel objected; however, the court allowed the entry into evidence. Owings read the following:

[OWINGS]: I'll start from the 9/23/95, ... the date of the records, the miscellaneous employment records.

[At Petitioner's former company, Petitioner's] pay rate is [$]19.25. She is a flagger. [Petitioner] *was discharged for timecard fraud, reporting hours that she did not work, insubordination, not following directions given by supervisor, violation of company rules, safety concerns, over use of phone.*

Employer believes [Petitioner's] actions were deliberate and have caused potential harm to the business.

[PETITIONER'S COUNSEL]: I'm going to object, again. Move *to strike that, again, as hearsay[.]*

THE COURT: We'll take it up later. *Continue.*

(Emphases added.)

That day, after the jury was excused, Petitioner's counsel stated that there was a "continuing objection" to the mention of the entry, and asked Respondent's counsel to "state for the record the names" of the company witnesses "he expects to call for purposes of admitting those records into evidence, and to overcome the hearsay objections[.]" Respondent's counsel responded that he intended to call the employees, who would "identify these ... documents as being part of [the company's] records." The court explained that it would "wait and see what the disclosure is." Notably, on November 8, 2006, after other witnesses had testified, the court stated:

It seems to me that both sides have been trying to get in a lot of hearsay information through the experts' reports.... [Respondent is] trying to get in hearsay statements from the employer through the expert [15].... Reading from an exhibit is not permitted unless and until the exhibit is admitted into evidence.... And, quite frankly, *I didn't catch it ... the first time you did it and unfortunately I had allowed that piece to come in. I think that was with one of the—maybe with [ ] Owings.*

(Emphasis added.)

As indicated, at numerous points throughout trial, Respondent referred to the fact that Petitioner was terminated from her job for "time[ ]card fraud." Additionally, Respondent asked Petitioner's economist,

---

15. The court was referring to Petitioner's expert witness Thomas Loudat, who holds a doctorate in economics, and who testified that day.

Thomas Loudat, if Petitioner was terminated for timecard fraud, to which Petitioner again objected. Finally, in closing argument, Respondent quoted from Owings' testimony, stating that Petitioner "[w]as discharged for time[ ]card fraud, reporting hours that she did not work; insubordination, not following directions given by supervisor; violation of company rules; safety concerns over use of phone[.]"

Respondent failed to call any witnesses with respect to the hearsay statements.

## VII.

On appeal, Petitioner argued, *inter alia,* that the court abused its discretion in "allowing inadmissible hearsay" that Petitioner was fired for " 'time[ ]card fraud', 'insubordination' and the like[,]" read "into the record[.]" According to Petitioner, the court erred in, among other things, (1) allowing inadmissible hearsay to be read into the record, in violation of HRE Rule 805 (1993),[16] (2) permitting the inference that Petitioner was acting in conformity with her prior conduct that was derived from the employment entry, in violation of HRE Rule 404(b) (Supp.2006),[17] and (3) failing to exclude the evidence about the reasons for Petitioner's termination pursuant to HRE Rule 403 (1993).[18] Petitioner maintained that because the entry was based upon "statements of other nonparties which were not attached to or included in the documents which [were] . . . improperly read to

the jury[,]" the statements were hearsay and should have been excluded.

In its answering brief, Respondent did not respond to the foregoing argument. Petitioner in her reply brief maintained that because Respondent "has not refuted or contested that these accusations [of the reasons for Petitioner's termination] were made, that they were inadmissible, or that they prejudiced the jury[,]" Petitioner should be granted a new trial.

## VIII.

The ICA disagreed with Petitioner, determining that cross examination of Owings was proper, whereas cross examination of Ferrante was improper, but did not "clearly prejudice"[19] Petitioner. *Steigman,* 2010 WL 4621838, at *5. According to the ICA, "[p]ursuant to Rule 702.1(a) [20], a party may generally cross-examine an expert on the matter upon which the expert's opinion is based and the reasons for the expert's opinion, even if the basis for the expert's opinion would ordinarily be inadmissible." *,Id.* Therefore, the ICA reasoned, "pursuant to HRE Rule 702.1(a), [Respondent] could properly cross-examine Owings regarding the content of . . . [the c]hronology, which summarized the documents upon which Owings' expert opinion was largely based." *Id.*

As to Ferrante's cross examination, the ICA determined that although Respondent's

---

**16.** HRE Rule 805 provides that "[h]earsay included within hearsay" is permissible "if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

**17.** HRE Rule 404(b) provides in pertinent part as follows.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

**18.** HRE Rule 403 provides that evidence, "[a]lthough relevant," "may be excluded if its probative value is substantially outweighed by the dan-

ger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**19.** "[T]he extent of cross-examination is a matter largely within the discretion of the trial court and will not be the subject of reversal unless clearly prejudicial to the complaining party." *Bhakta,* 109 Hawai'i at 208, 124 P.3d at 953 (internal quotation marks and citation omitted).

**20.** HRE 702.1(a) (1993) provides:

A witness testifying as an expert may be cross-examined to the same extent as any other witness and, in addition, *may be cross-examined as to* (1) the witness' qualifications, (2) the subject to which the witness' expert testimony relates, and (3) *the matter upon which the witness' opinion is based* and the reasons for the witness' opinion.

"reference to [Petitioner's] alleged timecard fraud during its cross-examination of Ferrante was improper[,]" Petitioner was not "clearly prejudiced" because (1) the court instructed the jury that counsel's statements and questions are not evidence, (2) Ferrante's testimony was restricted to causation and damages which the jury did not reach in rendering its verdict and Ferrante stated that he continued to believe Petitioner, and (3) "most importantly," the "reference to timecard fraud was repeated through Owing[ ]s['] testimony," which was "properly elicited on cross-examination[.]" *Id.*

## IX.

### A.

Under HRE Rule 703 (1993), an expert may render "opinions based on data not admissible in evidence so long as 'of a type reasonably relied upon by experts in the particular field.' "[21] Commentary on HRE 703. In that regard, this court has established that an expert may discuss the "bases" for his or her opinion on direct examination to aid the jury in evaluating the expert's opinion.[22] The "bases" may be inadmissible hearsay,[23] so long as the following three requirements are satisfied:

> [A]n expert witness [may] reveal[ ], in the course of direct examination, the contents of the materials upon which he or she has reasonably relied—hearsay though they may be—in order to explain the *basis* of his or her opinion, provided, of course, that (1) the expert has actually relied on the material as a *basis* of the opinion, (2) the materials are "of a type *reasonably relied upon by experts* in the particular field in forming opinions or inferences upon the subject," and (3) the materials *do not otherwise "indicate lack of trustworthiness."*

*Tabieros*, 85 Hawai'i at 384, 944 P.2d at 1327 (emphases added) (quoting HRE Rule 703).[24] In *Tabieros*, the circuit court prohibited a report from being admitted into evidence but

---

(Emphases added.)

**21.** HRE Rule 703 provides, in its entirety, as follows:

> **Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

**22.** The basis for the expert's opinion is "not admitted as substantive evidence, but only for purposes of showing the basis of the expert's opinion." *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 384, 944 P.2d 1279, 1327 (1997) (internal quotation marks and citation omitted); *see Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 547 (5th Cir.1978) (explaining that a court may give "strong limiting instructions to prohibit the jury from considering the [hearsay that formed the facts or data for an expert's opinion] ... substantively"); *see also Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 652 A.2d 475, 478 (1994) (noting that disclosure of the underlying facts or data "is admissible only for a limited purpose[,]" of constituting the facts or data underlying the experts opinion, that "may be useful to the jury in evaluating the expert's testimony").

**23.** If the "matters" are admitted into evidence, then the expert, of course, can testify to them. An expert who had "based" his "opinions" on "medical records, clinical notes, and operative reports of [doctors], and the medical records of [a doctor,]" which were *"admitted into evidence during the trial"* was permitted to provide opinions about whether a doctor had properly performed a procedure and whether the doctor caused the plaintiff's injuries. *Swink v. Cooper*, 77 Hawai'i 209, 215, 881 P.2d 1277, 1283 (App. 1994) (emphasis added). *See Keus*, 652 A.2d at 478–79 (noting that only "if the basis material is independently admissible under a hearsay exception may it be used substantively").

**24.** *Tabieros* also noted that HRE Rule 705, quoted below, which allows an expert to give an opinion without disclosing the underlying facts or data, was intended to eliminate the burdensome practice of requiring attorneys to formulate hypothetical questions in the instances where the expert "bases" his opinion upon other than firsthand knowledge. 85 Hawai'i at 384, 944 P.2d at 1327. In its entirety, Rule 705 provides as follows:

> **Disclosure of facts or data underlying expert opinion.** The expert may testify in terms of opinion or inference and give the expert's reasons therefor without disclosing the underlying facts or data if the underlying facts or data have been disclosed in discovery proceedings. *The expert may in any event be required to disclose the underlying facts or data on cross-examination.*

(Emphasis added.)

allowed "experts [to] refer to the report in their testimony." *Id.* at 381, 944 P.2d at 1324. An expert witness read repeatedly from the report, over objection. *Id.* at 383, 385, 944 P.2d at 1326, 1328. This court held that the expert's testimony did not satisfy the "preconditions to disclosure of the contents of the [report] within the context of explaining[ ] . . . the bases of his expert opinions[,]" *id.* at 385, 944 P.2d at 1328 (emphasis added), inasmuch as the expert "made no allusion to the [report]" when he listed the "factual bases of his opinions[,]" and he "read repeatedly from the [report] and explicated its data and conclusions without ever indicating in what manner the report's contents formed a basis of his opinions or in what way he otherwise relied on it[,]" *id.*[25]

Similarly, in *State v. Davis,* 53 Haw. 582, 588, 499 P.2d 663, 668 (1972), an expert real estate consultant and appraiser testified that land had suffered "damages in the amount of $255,170[,]" a "figure which [the expert] obtained from an engineer who was neither identified nor called upon to testify[.]" Insofar as "[a]n expert witness may not . . . *serve as a mere conduit for the hearsay opinion,* the factual basis of which is not established through evidence, of another expert who does not testify when the expert who does testify lacks the requisite qualifications to render the opinion in his own right[,]" *id.* at 589–90, 499 P.2d at 669 (emphasis added), this court held that it was erroneous to permit the expert's testimony as to the amount of damages sustained. *Id.*

### B.

Similar to an expert disclosing on direct examination "the contents of the materials upon which he or she has reasonably relied . . . to explain the basis" of the opinion, *Tabieros,* 85 Hawai'i at 384, 944 P.2d at 1327, an expert can be cross examined pursuant to HRE Rule 702.1(a) about "the *matter* upon which the witness' opinion is *based* and the reasons for the witness' opinion[.]" (Emphases added.) Although the *Tabieros* re-

quirements regarding otherwise inadmissible matter were established with respect to direct examination, logically, there is no reason to alter the grounds permitting inquiry into the "basis" for an expert's opinion on cross examination. Thus, *Tabieros* should apply to cross examination of an expert on the basis or bases relied on for his or her opinion. Indeed, the commentary to HRE Rule 702.1 explains that "a broad testimonial range" pursuant to HRE Rule 703 "suggests the need for an *equally broad cross-examination* " under HRE Rule 702.1(a). (Emphasis added.) This would indicate that the requirements set forth in *Tabieros* for consideration of otherwise inadmissible facts or data underlying an expert's opinion on direct examination applies "equally" to admission of such matters on cross examination. *See also* HRE Rule 705 (stating, in part, that "[t]he expert may . . . be required to disclose the underlying facts or data on cross-examination[ ]").

### X.

In the instant case, Owings gave an opinion as to Petitioner's potential employment options and the type of employment she could perform. Arguably, the termination entry was not a "basis" of Owings' opinion that "sedentary employment" was critical and that she should pursue further education. Consequently, Owings' opinion was not "based" on the termination entry. Similar to *Tabieros,* Owings was required to "read . . . from the [employment entry]" "without ever indicating in what manner the . . . contents formed a basis of his opinions[.]" 85 Hawai'i at 385, 944 P.2d at 1328. Therefore, on cross examination by Respondent, Owings "serve[d] as a mere conduit for the hearsay opinion," *Davis,* 53 Haw. at 589–90, 499 P.2d at 669, that Petitioner was terminated for timecard fraud, "the factual basis of which [was] not established through evidence[,]" *id.*

The circumstances here are also similar to those in *Keus,* 652 A.2d at 477. In that case,

---

25. Also, the expert, "[o]n cross-examination, . . . could not . . . recall where he had obtained the [report]," and only "[l]ater in his testimony, when [the plaintiffs'] counsel inquired whether

the [report] was one of the bases of his expert opinion, [the expert] answered in the affirmative[.]" *Tabieros,* 85 Hawai'i at 385, 944 P.2d at 1328.

the plaintiff was given the wrong medication by a pharmacist and was injured when she fell in her shower. She subsequently sued the pharmacist and the drug store. At trial, the expert testified that he believed the plaintiff's accident was caused by the drug she had mistakenly been given and that her fall would have occurred even if she had not been in the shower. *Id.* In response to a question by the plaintiff's counsel on direct examination, the expert stated that he had based part of his history of the plaintiff's injury on the reports made by two other doctors. *Id.* On cross-examination, the trial court admitted the reports of the other doctors over the objection of the plaintiff's counsel. *Id.* at 477–78.

On appeal, the Supreme Court of Vermont concluded that the trial court erred in admitting the reports on cross-examination. *Id.* at 480. The court explained that the opinions and conclusions in the two doctors' reports were inadmissible under Vermont Rule of Evidence 705 (substantially similar to HRE Rule 705)[26] because the expert did not rely on them in his own opinion. *Id.* at 479. Instead, "he used the reports only for the purpose of obtaining a history of the injury." *Id.* As in *Keus,* it was error for Owings to be cross examined about the termination entry, under HRE Rule 702.1(a), inasmuch as it was not established that the entry was "matter upon which the witness' opinion [was] based[.]" HRE Rule 702.1(a).

## XI.

Moreover, facts or data relied upon by an expert are not admissible unless they are of "a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," HRE Rule 703, *Tabieros,* 85 Hawai'i at 384, 944 P.2d at 1327; *see United States v. Locascio,* 6 F.3d 924, 938 (2d Cir.1993) ("[E]xpert witnesses can testify

to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions."); *see also United States v. Beasley,* 72 F.3d 1518, 1528 (11th Cir.1996) ("Expert medical testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations."). "Indeed, the very purpose of the reasonable reliance requirement is to set a standard for validating, as an expert's basis, material that will not achieve admissibility under [the HRE]." Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 703–2[2], at 7–32 (3d ed. 2006). "In determining whether an expert's reliance on information is reasonable, a trial court must evaluate the opinion and its foundation on a case-by-case basis." *Lai v. St. Peter,* 10 Haw.App. 298, 314, 869 P.2d 1352, 1361 (1994), overruled on other grounds by *Richardson v. Sport Shinko,* 76 Hawai'i 494, 880 P.2d 169 (1994).

In the instant case, there is no indication that the entry relied upon by Owings was of a type "reasonably relied" upon by experts in Owings' field, nor did the court "evaluate" Owings' opinion and its "foundation" before overruling Petitioner's objection to the entry. Consequently, it was error for the entry to be admitted during cross examination, inasmuch as there was no evidence that the entry was of a type reasonably relied upon by experts in Owings' field.[27]

## XII.

Finally, recitation of the entry should have been disallowed inasmuch as there were indications of "lack of trustworthiness[.]" HRE Rule 703; *Tabieros,* 85 Hawai'i at 384, 944 P.2d at 1327. "The possibility of exclusion of the [untrustworthy] opinion arises whenever an element of the expert's basis fails to

---

**26.** Vermont Rule of Evidence 705 provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

**27.** There is also no indication that the jury was directed to consider the entry for the limited purpose of examining Owings' testimony, and not as substantive evidence. *See Tabieros,* 85 Hawai'i at 384, 944 P.2d at 1327 ("Once disclosed, the facts or data are not admitted as substantive evidence, but only for purposes of showing the basis of the expert's opinion." (Internal quotation marks and citation omitted)).

achieve even the minimum evidentiary respectability of the reasonable reliance standard." *Bowman, supra,* § 703-2[4], at 7-35. In *Tabieros,* because the report at issue was, *inter alia,* "based on multiple hearsay, [and] was of undetermined authorship," the report indicated a lack of trustworthiness and the expert should not have been allowed to read repeatedly from the report. 85 Hawai'i at 387, 944 P.2d at 1330.

*Bryan v. John Bean Div. of FMC Corp.* is also instructive. In *Bryan,* the plaintiff sustained back and eye injuries after a clevis (cast-iron tool) he was using broke. 566 F.2d at 543. The plaintiff sued the designer-distributor of the clevis. *Id.* At trial, Walters, an expert witness, testified that the clevis was strong enough to endure the stress of normal use. *Id.* at 544. Walters based this conclusion on data provided in the reports by two other experts who did not testify at trial. *Id.* During Walters' cross-examination, plaintiff's counsel paraphrased and directly quoted opinions contained in the other reports. *Id.* The defendants objected, arguing that the facts in the reports were admissible, but the experts' opinions were not. *Id.* The court disagreed and admitted the opinions. *Id.*

On appeal, the Fifth Circuit concluded that the trial court erred in admitting the experts' opinions. *Id.* That court stated that under Rule 705 of the Federal Rules of Evidence (substantially similar to HRE Rule 705),[28] "otherwise hearsay evidence that reveals the underlying sources of the expert's opinion should be as permissible on cross-examination as on direct[,]" but that "[l]ike all exceptions to the hearsay rule the full disclosure of the source underlying a testifying expert's

opinion depends upon the two critical factors of necessity and trustworthiness[,]" *id.* at 545. The Fifth Circuit concluded that parts of the opinions should not have been admitted because they were unnecessary and the opinions did not bear certain indicia of trustworthiness. *Id.*

As in *Bryan* and *Tabieros,* there appears to be no dispute in this case that the employment entry contained hearsay, and even multiple hearsay. The entry and testimony thereon would have been admissible as substantive evidence only under an exception to the hearsay rule.[29] But no hearsay exception was proffered to the court that would allow the entry, or testimony concerning it, into evidence. Here, the preparer of the chronology, the writer of the entry itself, and the person(s) making the statements recorded in the entry, were not called to testify. No foundation was laid for admission of the entry as a record kept in the ordinary course of business, or as a public record. Although Respondent stated that it would call witnesses from the company to establish a foundation for admission of the entry, it never did. Thus, the entry lacked "even ... minimum evidentiary respectability." *Bowman, supra,* § 703-2[4], at 7-35. It was therefore error for the court to allow Owings to discuss the entry inasmuch as "inadmissible material" placed "before the jury" the "authoritative conclusion[ ]" of Petitioner's employer regarding the reasons Petitioner was terminated, which were not "otherwise admissible." *See Tabieros,* 85 Hawai'i at 386-87, 944 P.2d at 1329-30 (concluding that expert testimony that disclosed otherwise inadmissible

---

28. At the time of the decision, Rule 705 of the Federal Rules of Evidence stated:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

*Keus,* 652 A.2d at 478 n. 2.

The rule has since been amended in non-relevant part to provide as follows:

> The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The ex-

pert may in any event be required to disclose the underlying facts or data on cross-examination.

29. In regard to trustworthiness, *Bryan* stated:

> [w]hen courts have permitted disclosure of hearsay underlying an expert's opinion[,] ... some external circumstances guaranteed the reliability of the evidence. Sometimes the evidence can be relied upon because it constitutes a routine and customary record of a business concern ... or because an uninterested, expert third part prepared the report ... or because experts particularly doctors customarily rely upon third party reports from other experts.

566 F.2d at 546.

material for the purpose of either "injecting untrustworthy evidence into the trial" or "indirectly placing before the jury the purportedly authoritative conclusions of others on the same subject—not otherwise admissible on some independent ground—is improper.")

Additionally, a trial court should "exercise supervision over the expert's testimony, pursuant to HRE ... 403, to ensure that the testimony is not prejudicial." *Id.* at 394, 944 P.2d at 1337. Thus, "expert testimony otherwise admissible under [Federal Rules of Evidence (FRE)] Rules 702 and 703[30] may[, pursuant to FRE Rule 403,[31]] still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *City of Chicago v. Anthony,* 136 Ill.2d 169, 144 Ill.Dec. 93, 554 N.E.2d 1381 (1990) (internal quotation marks and citations omitted).

## XIII.

Based on the foregoing, the ICA reversibly erred in upholding the court's admission of the entry, insofar as (1) there was no evidence as to whether Owings' opinion was "based" on the entry containing the information; (2) there was no indication that the entry read was of a type "reasonably relied" on by experts in the field of vocational rehabilitation; and (3) there was no discussion of whether the entry was "trustworth[y,]" necessary prerequisites to a determination of whether inadmissible evidence may be elicited through an expert for the purpose of explaining the basis or bases of the expert's opinion, *see* HRE Rule 703; *see also* HRE Rule 702.1(a). Owings should not have been

allowed to read the entry into the record under the guise of an inquiry into the basis for his opinion. *See* HRE Rule 703; *see also* HRE Rule 702.1(a); HRE Rule 705. Therefore, on remand, assuming an objection is raised, the court must ascertain whether on cross examination, as on direct examination, an expert's opinion is "based" on certain facts, data, or matter that are "reasonably relied" on by other experts in the field, and that does not indicate lack of trustworthiness.

## XIV.

In light of the fact the cross examination of Owings was erroneous, the ICA was incorrect in deciding that the question posed to Ferrante, of whether Petitioner's termination for timecard fraud would indicate a credibility problem, was not clearly prejudicial. First, as to the ICA's "most important[ ]" reason, that the reference to timecard fraud was "properly elicited" during Owings' cross examination, the reference was not "properly elicited" for the reasons discussed *supra,* and, thus, cannot support the conclusion that Petitioner was not prejudiced. *Steigman,* 2010 WL 4621838, at \*5. Second, the jury instruction that counsel's statements and questions are not evidence, in fact had a deleterious effect inasmuch as the jury was also instructed that attorneys' remarks "may assist [the jury] in understanding the evidence and applying the law[.]" Thus, the jury was directed to Respondent's use of the hearsay remarks as of assistance in "understanding the evidence" and applying the law. Third, although Ferrante's testimony con-

---

**30.** It is notable that Rule 703 of the FRE was amended in 2000 to require that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." The commentary explained, "Rule 703 has been amended to emphasize that when an expert reasonably relies on *inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.*" 2000 FRE Rule 703 Commentary (emphasis added). According to the federal rule, "[t]he information may be disclosed to the jury,

upon objection, *only if* the trial court finds that the probative value of the information in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect." *Id.* (emphasis added).

**31.** Rule 403 of the FRE, which is identical to HRE Rule 403, provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

cerned causation and damages, the assertion that the jury did not "reach" those questions, *Steigman*, 2010 WL 4621838, at *5, is speculative inasmuch as the jury is obligated to consider all of the evidence and testimony in reaching a decision, and therefore the jury is presumed to have considered Ferrante's testimony. *See* Hawai'i Civil jury Instruction No. 3.3 ("Upon consideration of all the evidence, if [the jury] find[s] that a particular claim[ ] . . . is more likely true than not true, then such claim, defense, or fact has been proven by a preponderance of the evidence."). Moreover, the fact that the jury delivered a verdict that Respondent was not negligent does not dispel the inference that the question to Ferrante suggesting that Petitioner had lied before and was lying now, could have influenced the jury into returning a verdict against Petitioner.

## XV.

For the reasons discussed herein, I concur that the case must be remanded to the court for a new trial, but on the grounds stated herein.